UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JEFFERSON L. PIERCE, Individually and as Legal
Parent and Guardian of J.P. and M.P., Minors, and
DIANE J. PIERCE, Individually and as Legal Parent
and Guardian of J.P. and M.P., Minors,

                              Plaintiffs,

              -vs-                                            06-CV-644C(F)

CHAUTAUQUA COUNTY, NEW YORK; CHAUTAUQUA
COUNTY SHERIFF'S DEPARTMENT; JOSEPH A.
GERACE, Individually and as Chautauqua County Sheriff;
Chautauqua County Sheriff's Deputies, CHRIS OTTOWAY
and JASON BEICHNER; Intended to be the Individual Officers
involved in the harassment, assault, and/or detention of
Plaintiff, Jefferson L. Pierce, herein "CCSD JOHN DOE"
and/or "CCSD JANE DOE," the names "CCSD John/Jane
Doe," being fictitious, and intended to be any additional
individual officers involved in the harassment assault and/or
detention of Plaintiffs herein; KIRK MAURER, Individually
and as Commissioner of Chautauqua County Department
of Social Services; CHAUTAUQUA COUNTY DEPARTMENT
OF SOCIAL SERVICES; and "DSS JOHN DOE," and/or
"DSS JANE DOE," the names "DSS John/Jane Doe" being
fictitious, intended to be the Chautauqua County Department
of Social Services Employees or Agents involved in the
harassment of the Plaintiffs herein,

                              Defendants.

_____


         In this action, plaintiffs seek damages against the County of Chautauqua; the

Chautauqua County Sheriff's Department ("Sheriff's Department"); Sheriff Joseph A.

Gerace ("Sheriff Gerace"), individually and in his official capacity; Sheriff's Deputies Chris

Ottoway ("Ottoway"), Jason Beichner ("Beichner"), and any other deputies involved;

Commissioner of Chautauqua County Department of Social Services Kirk Maurer

("Commissioner Maurer") individually and in his official capacity; Chautauqua County Department of Social Services ("DSS"); and any of its agents who may have been involved. Plaintiffs' causes of action are based on theories of liability for several common law torts, as well as violations of plaintiffs' civil rights under 42 U.S.C. § 1983.  The defendants have filed a motion to dismiss plaintiffs' claims pursuant to Fed. R. Civ. P. 12(b)(6) (Item 23). For the reasons that follow, defendants' motion is granted in part and denied in part.

## BACKGROUND and FACTS

According to the amended complaint, on November 25, 2005 at approximately 7:50 p.m., Chautauqua County Sheriff's Deputies Ottaway and Beichner arrived at the plaintiffs' house and accused plaintiff Jefferson L. Pierce of discharging a firearm after dark (Item 22, ¶ 19).  The deputies also stated that plaintiff Jefferson Pierce had a felony record and was therefore unlawfully in possession of a firearm (*id.*).  Plaintiffs denied that a firearm had been discharged, and Mr. Pierce told the deputies that he was not a convicted felon (*id.,* ¶ 20).  Nonetheless, the deputies entered the residence without a warrant and without consent, knocked over the plaintiff's two-year-old daughter, and confiscated several firearms, including a World War I-era rifle which plaintiff Diane J. Pierce was holding  (*id.,* ¶¶ 21-22).  Plaintiffs also allege that the deputies threatened the plaintiffs that Chautauqua County Child Protection Services agents, who were parked in plaintiffs' driveway, would remove plaintiffs' children if plaintiffs did not comply with the search of their residence (*id.,* ¶¶ 19, 24).

Plaintiffs' complaint further alleges that the deputies used excessive force when arresting Mr. Pierce (Item 22, ¶¶ 36-40).  The complaint alleges that the deputies

"'grabbed' Mr. Pierce by the arms, 'wrenched' him around, and forcibly removed him from his home . . . ," causing pain and exacerbating his preexisting injuries (*id.,* ¶¶ 25, 37, 38). Mr. Pierce was taken to the Chautauqua County jail, where he was detained for approximately one hour until it was discovered that a mistake had been made, and that he was not a convicted felon (*id.,* ¶ 26).  Mr. Pierce was then released (*id.).*

Plaintiffs initiated this action by filing a complaint on September 26, 2006 (Item 1). After the defendants filed a motion to dismiss, plaintiffs filed an amended complaint on December 4, 2006 (Item 18).  Plaintiffs claim, among other things, that the actions of the Sheriff's Deputies violated their civil rights according to 42 U.S.C. § 1983.  Specifically, plaintiffs claim that Chautauqua County and/or Sheriff Joseph A. Gerace are liable for plaintiffs' injuries because Chautauqua County "lacked adequate policy in recruiting, managing and training officers in police actions . . . ." (Item 22, ¶ 32).  Plaintiffs also claim that Chautauqua County and Sheriff Gerace have a municipal policy which allows officers to act on complaints without sufficient investigation (*id.,* ¶ 33).

On January 5, 2007, the defendants filed a motion to dismiss plaintiffs' amended complaint (Item 23).  Defendants argue that plaintiffs have failed to allege any actions by the Chautauqua County DSS or Commissioner Maurer that constitute a violation of section 1983, failed to allege any personal involvement by Sheriff Gerace, failed to adequately allege any municipal custom or policy necessary to support a claim against the municipalities or individual defendants sued in their official capacities, failed to state a claim against the Sheriff's Department and DSS as administrative arms of Chautauqua County, and have failed to allege a claim against the individual deputies (Item 24, ¶¶ 14-19).

## DISCUSSION

**I.    Motion to Dismiss**

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the. . . claim is and the grounds upon which it rests.'"  *Bell Atlantic Corp. v. Twombly*, 550 U.S. ___, 127 S.Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  Under Rule 12(b)(6), a plaintiff's complaint will be dismissed if it fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  When ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.  *Bell Atlantic Corp.*, 127 S.Ct. at 1965 (citing *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508, n.1 (2002)).  While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  *See Papasan v. Allain,* 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation").

In ruling on a motion to dismiss, the court is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985) (citing *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc.*, 748 F.2d 774, 779 (2d Cir. 1984)).  Therefore, after interpreting the complaint in favor of the plaintiff, if it is determined that the

plaintiff has failed to allege a set of facts which, if proven to be true, would entitle him to relief, the complaint will be dismissed.  *See Ferran v. Town of Nassau*, 11 F.3d 21, 22 (2d. Cir. 1993), *cert. denied*, 513 U.S. 1121 (1994);  *Sworn v. Western New York Children's Psychiatric Ctr.*, 269 F. Supp. 2d 152, 155 (W.D.N.Y. 2003) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

**II.     Claims Against the Sheriff's Department and DSS**

The defendants seek dismissal of the complaint against the Chautauqua County Sheriff's Department and the Chautauqua County DSS on the ground that both governmental departments are administrative units of the County of Chautauqua and are not separate legal entities subject to suit.

It is well settled that, under New York law, "departments which are merely administrative arms of a municipality, do not have a legal identity separate and apart from the municipality and cannot sue or be sued." *Caidor v. M&T Bank*, 2006 WL 839547, at *2 (N.D.N.Y. March 27, 2006) (quoting *Hall v. City of White Plains*, 185 F. Supp. 2d 293, 303 (S.D.N.Y. 2002)).  Accordingly, since the Chautauqua County Sheriff's Department and DSS are merely administrative arms of Chautauqua County, the claims against them must be dismissed. *See Willard v. Town of Hamburg*, 1996 WL 607100, at *1 (W.D.N.Y. Sept. 30, 1996) (dismissing the claims against the Police Department and the Town Board because neither "exist separate and apart from the Town and [they] do not have their own legal identities").

### III.    Claims Against Commissioner Maurer and Sheriff Gerace

The plaintiffs have sued both Commissioner Maurer and Sheriff Gerace in their official capacities as well as their individual capacities.  The defendants, however, argue that the complaint alleges no facts which indicate personal involvement by Commissioner Maurer or Sheriff Gerace in the alleged incident, and that plaintiffs have failed to allege any actions by these defendants which deprived plaintiffs of their constitutional rights.

In order for a plaintiff to sustain a section 1983 claim against a supervisory official in his individual capacity, the plaintiff must allege and demonstrate that the official was personally involved in the alleged constitutional violation. *See Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (citing *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003), *cert. denied*, 543 U.S. 1093 (2005)).

> The personal involvement of a supervisory defendant may be shown by the evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of [others] by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citing *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986)).

In this case, the plaintiffs' amended complaint does not allege any personal involvement by Commissioner Maurer in the alleged violation of plaintiffs' constitutional rights.  Moreover, Commissioner Maurer is never specifically mentioned in the body of the amended complaint.  Rather, plaintiffs allege that DSS employees (Child Protection

6

Services agents) were parked in an unfamiliar van in their driveway (Item 22, ¶ 24). Furthermore, plaintiffs never allege any conduct by Commissioner Maurer's employees that would constitute a violation of plaintiffs' constitutional rights. It is merely alleged that DSS employees sat inside of a van parked in plaintiffs' driveway during the course of an official investigation. This conduct does not constitute the violation of a constitutional right. Plaintiffs also fail to allege that Commissioner Maurer has created a custom or policy which violates constitutionally protected rights, that Commissioner Maurer was grossly negligent in supervising his subordinates, or that he exhibited deliberate indifference to the constitutional rights of others. Since plaintiffs have not alleged any conduct by Commissioner Maurer which would establish personal involvement of a supervisory official under section 1983, the claims against Commissioner Maurer must be dismissed. *See Dove v. Fordham Univ.*, 56 F. Supp. 2d 330, 335 (S.D.N.Y. 1999) ("Where the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted"), *aff'd*, 210 F.3d 354 (2d Cir. 2000) (quoting *Morabito v. Blum*, 528 F. Supp. 252, 262 (S.D.N.Y. 1981), *superseded on other grounds as recognized in Hines v. Sullivan*, 806 F. Supp. 413 (W.D.N.Y. 1992)).

Similarly, in their amended complaint, plaintiffs do not allege any personal involvement by Sheriff Gerace which would create liability under section 1983. There are no allegations that Sheriff Gerace directly participated in the arrest and detention of Mr. Pierce, nor are there allegations that Sheriff Gerace, after being informed of the wrongful arrest and detention, failed to provide a remedy. Moreover, plaintiffs' allegations of Sheriff Gerace's involvement are conclusory and do not state a claim upon which relief can be

7

granted. Plaintiffs, in their claim of false imprisonment, state that Sheriff Gerace and/or Chautauqua County "lacked adequate policy in recruiting, managing and training officers in police actions and allowed the officers to act with grave indifference to human safety and life." (Item 22, ¶ 32). The plaintiffs rely solely on the alleged constitutional violations surrounding Mr. Pierce's arrest in order to support their claim of inadequate policy and training. Plaintiffs claim that Mr. Pierce's arrest was "unreasonable" and "exhibited depravity," and that "these actions are standard operating procedure for the Chautauqua County Sheriff's Department." *Id.* In addition, plaintiffs also allege that Sheriff Gerace has created a policy which allows officers "to act on complaints with no background check, inquiry into the source of the complaint, or without proper investigation . . . ." *Id.,* ¶ 33. Again, plaintiffs rely solely on the events surrounding the arrest of Mr. Pierce to allege that this is the "standard operating procedure" of the Sheriff's Department. Plaintiffs assert that "[u]pon information and belief, this policy is in existence because of the action and/or lack of action in controlling and/or lack of training of deputy Sheriffs by Sheriff Joseph A. Gerace." *Id.*

These allegations are insufficient to survive a motion to dismiss. The plaintiffs have not alleged sufficient facts to support their claims that Sheriff Gerace created unconstitutional policies, and they have not alleged any facts which indicate that Sheriff Gerace had the requisite personal involvement in the alleged constitutional violation. Specifically, plaintiffs have not alleged factual evidence, outside of this isolated incident, which would create an inference of a custom or policy created by Sheriff Gerace. Furthermore, plaintiffs' allegations are conclusory, and they do not allege a tangible connection between any actions of Sheriff Gerace and the injuries suffered by Mr. Pierce.

8

*See Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986) (dismissing claims against the County Commissioner of Corrections and the Warden because the claims were conclusory and they did not "allege a tangible connection between the acts of [the defendants] and the injuries suffered").   Rather, plaintiffs' allegations are simply an attempt to hold Sheriff Gerace vicariously liable for the alleged constitutional violations of deputies Ottoway and Beichner which, under section 1983, is improper.  *See Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) ("'[S]upervisor liability in a § 1983 action depends on a showing of some personal responsibility, and cannot rest on respondeat superior'") (quoting *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003), *cert. denied*, 543 U.S. 1093 (2005)).   Since plaintiffs' allegations are conclusory and do not contain sufficient factual support, the claims against Sheriff Gerace must be dismissed.

## IV.    Sheriff's Deputies Ottoway and Beichner

Plaintiffs have also alleged claims against Chautauqua County Sheriff's Deputies Chris Ottoway and Jason Beichner.   Defendants argue that plaintiffs have sued the deputies solely in their official capacities, and that such claims must be dismissed as they are equivalent to claims against the County.  In the amended complaint, plaintiffs state that Ottoway and Beichner are "individual[s], who harassed and assaulted Plaintiffs and /or unlawfully detained Plaintiff Jefferson L. Pierce . . . ."  Item 22, ¶¶ 9, 10.  In contrast, plaintiffs named Sheriff Gerace and Commissioner Maurer, individually and as County Sheriff and Commissioner of DSS, respectively.  *Id.,* ¶¶ 8, 13.  While plaintiffs have stated that defendants Ottoway and Beichner are Chautauqua County Sheriff's Deputies, a plain reading of the complaint indicates that plaintiffs intended that Ottoway and Beichner be

sued in their individual capacities.   The court concludes that Deputies Ottoway and Beichner are named in their individual capacities in the amended complaint, and the section 1983 claims against them for (i) false arrest, (ii) false imprisonment and, (iii) excessive use of force will thus be examined for legal sufficiency.

### A.      False Arrest/Imprisonment

"The elements of false arrest/imprisonment under § 1983 are substantially the same as those under New York law."   *See Caidor v. M&T Bank*, 2006 WL 839547, at *4 (N.D.N.Y. March 27, 2006) (citing *Danielak v. City of New York*, 2005 WL 2347095, at *6 (E.D.N.Y. 2005), *aff'd*, 209 Fed. Appx. (2d Cir. 2006).  In order for a plaintiff to state a claim for false arrest/imprisonment under New York law, a plaintiff must show that: (1) the defendant intended to confine him, (2) plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged or justified.  *Id.* (quoting *Brewster v. Nassau County*, 349 F. Supp. 2d 540, 551 (E.D.N.Y. 2004)).

A confinement is privileged or justified if the arrest is made with probable cause. *Brewster v. Nassau County*, 349 F. Supp. 2d at  551.  Probable cause exists when, at the moment of the arrest, "'the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [individual] had committed or was committing an offense.'" *Id.*, quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)).   The determination of whether probable cause exists can be made by the court as a matter of law, so long as there is "no dispute as to the pertinent events and the knowledge of the arresting officers."   *Id.* (citing *Weyant v.*

10

*Okst*, 101 F.3d 845, 852 (2d Cir. 1996)).  Therefore, pursuant to Rule 12(b)(6), if the court determines that a plaintiff's complaint sufficiently demonstrates that the arresting officers had probable cause, the claim for false arrest must be dismissed.  *Id.* (citing *Daniels v. City of New York*, 2003 WL 22510379, at *2-4 (S.D.N.Y. Nov. 5, 2003)).

In this case, the complaint clearly shows that plaintiff:  (1) was confined by Deputies Ottoway and Beichner, (2) was conscious of the confinement, and (3) did not consent to the confinement by the deputies (Item 22, ¶¶ 18-35).  Therefore, plaintiff satisfies the first three elements, as set forth above, of the false arrest/imprisonment claim.  Defendants' motion turns on the element of probable cause, which is usually a question of fact following discovery.  *See Weyant v. Okst*, 101 F.3d at 852 ("The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers"); *Bullard v. City of New York*, 240 F.Supp.2d 292, 298 (S.D.N.Y. 2003) ("In contrast, '[w]here the question of whether an arresting officer had probable cause is predominantly factual in nature . . . the existence . . . of probable cause is to be decided by the jury'") (quoting *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir.1997), *cert. denied*, 522 U.S. 1115 (1998)).

With regard to the fourth element, plaintiffs allege that the deputies lacked probable cause to arrest Mr. Pierce.  Specifically, plaintiffs allege that the deputies "had no reasonable basis to detain Plaintiff, and his false arrest was without just cause or provocation." (Item 22, at ¶ 27.)  The complaint alleges that Deputies Ottoway and Beichner acted without a search warrant and upon false information regarding gunshots on Mr. Pierce's property (*id.*, at ¶¶ 26, 42).  It is difficult, however, to determine from the

11

complaint exactly what information was available to the deputies at the time they responded to the complaint, and whether they had any reason to question the veracity of the report of a discharged firearm.   This deficiency makes it impossible for the court to determine as a matter of law that the deputies acted with probable cause.   Moreover, plaintiffs allege that "'someone' had 'misread'" information regarding Mr. Pierce's criminal history and, as a result, Mr. Pierce was thought to be a convicted felon (*id.*, at ¶ 26).   It is alleged that the deputies relied on this false information in responding to the complaint and in their arrest of Mr. Pierce (*id.*).   The fact that Mr. Pierce's criminal history was "misread," and that he was released immediately upon the deputies' learning of the error, raises questions with regard to the existence of probable cause.   For these reasons, this court denies defendants' motion to dismiss plaintiffs' false arrest/imprisonment claim.

### B.   Excessive Force

The plaintiffs also assert a cause of action against Deputies Ottoway and Beichner for the use of excessive force during the course of the arrest of Mr. Pierce.   A person's Fourth Amendment rights are violated, and a section 1983 claim arises, if excessive force is used during an arrest, an investigatory stop, or any other seizure of a free citizen. *See Cox v. County of Suffolk*, 780 F. Supp. 103, 109 (E.D.N.Y. 1991) (citing *Graham v. Connor*, 490 U.S. 386, 388 (1989)).   To analyze a claim of excessive force under the Fourth Amendment, the court must apply an objective standard. *Caidor v. M&T Bank*, 2006 WL 839547, at *6 (N.D.N.Y. March 27, 2006).   The court's inquiry is whether "'the officers' actions [were] "objectively reasonable" in light of the facts and circumstances confronting them.'"   *Id.* (quoting *Cox*, 780 F. Supp. at 109).   Furthermore, the injuries suffered by a

plaintiff need not be permanent or severe in order to recover damages under section 1983 for the use of excessive force.  *See Cox*, 780 F. Supp. at 109 (quoting *Robison v. Via*, 821 F.2d 913, 924 (2d Cir. 1987)).

Here, it is alleged that during the arrest the deputies "'grabbed' [Mr.] Pierce by the arms, handcuffed him, pulled and 'wrenched him around' with great physical force, then dragged him over the lawn of [his] home and forced him into a sheriff patrol car." (Item 22, ¶ 37.)  It is further alleged that Mr. Pierce showed no resistance during the arrest, yet the deputies still used such excessive force (*id.*).  Plaintiffs also allege that the deputies showed a disregard for Mr. Pierce's preexisting injuries, which have rendered him totally disabled (*id.*).  It is alleged that the excessive force used by the officers has left Mr. Pierce physically damaged (*i.e.*, bruised, weak, sore, lame), and has exacerbated his preexisting injuries, causing him great pain, discomfort, and restrictions in his range of motion (*id.*, ¶¶ 38-39).  Plaintiffs also allege that Mr. Pierce has suffered emotional pain which makes him "extremely nervous, humiliated and fearful because of [the deputies'] actions, and Plaintiff's feelings that he was unable to protect his wife and children from [the deputies]." (*Id.*, ¶ 39.).

The court finds that these allegations are sufficient, if proven, to show that the actions of the deputies may not have been "objectively reasonable."  *See, e.g., Robison v. Via*, 821 F.2d at 924 (denying a summary dismissal when the plaintiff alleged that she had been "'pushed' . . .  against the inside of the door of her car, 'yanked' . . . out, thr[own] up against the fender, and [had her arm] 'twisted behind her back'").  Since the allegations by Mr. Pierce are similar in nature to the allegations in *Robison*, and allowing the plaintiffs

the benefit of all favorable inferences, the defendants' motion to dismiss plaintiffs' excessive force claim against Deputies Ottoway and Beichner is denied.

## V.    Municipal Custom or Policy

The plaintiffs have also named Chautauqua County as a defendant, arguing that the County has a municipal custom or policy which allows officers to respond to complaints in a manner which violates constitutionally protected rights.  Furthermore, the plaintiffs argue that Chautauqua County has not properly trained its officers, and that this lack of training allows them to act in a manner which violates constitutionally protected rights.  The defendants argue that plaintiffs' section 1983 claims against Chautauqua County insufficiently allege a custom or policy and that plaintiffs' allegations are conclusory.

According to section 1983, "every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects or causes to be subjected, any . . . person within the jurisdiction thereof to the deprivation of any rights . . . secured by the Constitution and laws, shall be liable to the party injured . . . ."  42 U.S.C. § 1983.  Municipalities are considered "persons" for purposes of section 1983 claims; however, the municipality may not be sued under section 1983 unless the challenged action of a municipal employee was performed pursuant to a municipal custom or policy.  *Monell v. Dep't of Social Services*, 436 U.S. 658, 691, 694 (1978).  Moreover, a municipality cannot be held liable under section 1983 for the tortious conduct of its employees based on a theory of *respondeat superior.  Id.* at 691.

Although a plaintiff must show the existence of a municipal custom or policy, the custom or policy need not be an explicitly stated rule or regulation. *Ricciuti v. N.Y.C. Transit*

14

*Authority*, 941 F.2d 119, 123 (2d Cir. 1991).   Rather, an inference that a municipal custom

or policy exists may be drawn from:

> circumstantial proof, such as evidence that the municipality so failed to train
> its employees as to display a deliberate indifference to the constitutional
> rights of those within its jurisdiction, or evidence that the municipality had
> notice of but repeatedly failed to make any meaningful investigation into
> charges that police officers had used excessive force in violation of the
> complainants' civil rights . . . .

*Id.* (internal citation omitted).   An inference of a municipal custom or policy may not,

however, be drawn from "a single incident alleged in a complaint, especially if it involved

only actors below the policy-making level . . . ."   *Id.*

In order for a plaintiff to demonstrate a municipality's "deliberate indifference" to the

constitutional rights of those within its jurisdiction, a plaintiff must show that the "need for

more or different training is so obvious, and the inadequacy so likely to result in the

violation of constitutional rights, that the policymakers of the [municipality] can reasonably

be said to have been deliberately indifferent to the need."   *City of Canton v. Harris*, 489

U.S. 378, 390 (1989).   "An obvious need may be demonstrated through proof of repeated

complaints of civil rights violations; deliberate indifference may be inferred if the complaints

are followed by no meaningful attempt on the part of the municipality to investigate or to

forestall further incidents."   *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995)

(citing *Ricciuti*, 941 F.2d at 123; *Fiacco v. City of Rensselaer*, 783 F.2d 319, 328 (2d Cir.

1986), *cert. denied*, 480 U.S. 922 (1987)).

In this case, the plaintiffs allege that Sheriff Gerace and/or Chautuaqua County

"have a municipal policy or custom allowing its officers to act on complaints with no

background check, inquiry into the source of the complaint, or without proper investigation

15

whatsoever to justify the degree of force displayed [by deputies Ottoway and Beichner] on November 25, 2005." (Item 22, ¶ 33).  The plaintiffs further allege that this policy is due to the action, or inaction, of Sheriff Gerace (*id.*).  The plaintiffs, however, have not made sufficient factual allegations to support this claim.  The plaintiffs allege that "upon information and belief" the county has such a policy.  *Id.*  However, plaintiffs' amended complaint contains no factual allegations which support an inference of such a policy other than the events which took place at plaintiffs' residence on November 25, 2005.  The plaintiffs allege that because certain actions were taken during the course of the arrest of Mr. Pierce, these actions represent Chautuaqua County custom or policy.   As stated above, an inference of a custom or policy cannot be drawn from "a single incident alleged in a complaint."  *Ricciuti*, 941 F.2d at 123.  Had plaintiffs alleged other occurrences of similar conduct by Chautauqua County deputies, this court may have been able to draw an inference of such a custom or policy.  In the absence of such factual support, however, this court must dismiss plaintiffs' claim against Chautauqua County.

Similarly, the plaintiffs have failed to allege enough facts to support an inference that Chautauqua County has failed to properly train its municipal employees.  Plaintiffs allege that Sheriff Gerace and/or Chautauqua County "lacked adequate policy in recruiting, managing and training officers in police actions and allowed the officers to act with grave indifference to human safety and life." (Item 22, ¶ 32).  Again, these conclusory allegations are not supported by sufficient facts.  The plaintiffs rely solely on the events surrounding Mr. Pierce's arrest, and allege no other incidents of officers using similar conduct which would create an inference of Chautauqua County's failure to train its officers regarding "human safety and life."  *(Id.)*  Furthermore, plaintiffs do not allege that Chautuaqua County

had any knowledge of officers who have acted with "grave indifference to human safety and life." Therefore, the court cannot conclude that Chautauqua County's need to train its officers regarding "human safety and life" was "so obvious" that its failure to do so was a reflection of its "deliberate indifference" to the constitutional rights of its citizens. *See Canton*, 489 U.S. at 390; *cf. Aguilera v. County of Nassau*, 453 F. Supp. 2d 601, 608 (E.D.N.Y. 2006) (holding that the plaintiffs' allegations for failure to train its employees were sufficient because the plaintiffs alleged that the county received "numerous complaints regarding its officers['] failure to provide immediate emergency medical attention . . . "). Without factual support, the court is unable to draw the inference that Chautauqua County failed to adequately train its officers. Accordingly, plaintiffs' section 1983 claims against Chautauqua County are dismissed.

## VI.    State Common Law Claims

The defendants contend that plaintiffs' state common law causes of action should be dismissed arguing that: (1) some of the causes of action are repetitive, (2) the seventh and eleventh causes of action, for "damage to personal property," are not cognizable claims, and (3) since plaintiffs' federal causes of action should be dismissed, the court should decline to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3).[1] (*See* Item 24, at 14-16). Plaintiffs have not responded to defendants' arguments regarding the state common law claims.

---

[1] Defendants also argue that "a number of plaintiffs' causes of action fail to meet the pleading requirements of the Federal Rules of Civil Procedure . . . ." ( Item 24, Exh. 4, at 13.) The defendants do not, however, specify which causes of action fail to meet the pleading requirements. *See id.,* pp. 14,16. As the defendants have not specified which causes of action fail to meet the pleading requirements, the court does not address this argument.

At the outset, the court has determined that the amended complaint sufficiently alleges federal law claims against Sheriff's Deputies Ottoway and Beichner for false arrest/imprisonment and for the use of excessive force.  In addition, the court concludes that the federal law claims and the state law claims alleged in this case "derive from a common nucleus of operative fact . . . such that [plaintiffs] would ordinarily be expected to try them all in one judicial proceeding . . . ."  *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966).  Accordingly, this court will exercise supplemental jurisdiction over all state law claims pursuant to 28 U.S.C. § 1367(a).

With regard to the state law claims, defendants argue that the amended complaint contains repetitive causes of action.  For example, the plaintiffs' amended complaint states a fifth cause of action "by plaintiffs" for intentional infliction of emotional distress (Item 22, ¶¶ 43-50).  Plaintiffs also allege a ninth cause of action on behalf of Diane Pierce and a twelfth cause of action on behalf of plaintiffs' minor children for intentional infliction of emotional distress (*id.,* ¶¶ 61-66, 73-82).  The defendants argue that as the fifth cause of action appears to state a claim on behalf of all the plaintiffs for intentional infliction of emotional distress, the ninth and twelfth causes of action are repetitive and should be dismissed (*See* Item 24, p. 15).

Having read the amended complaint in its entirety, and interpreting the complaint in the light most favorable to the plaintiffs, this court finds that the ninth and twelfth causes of action are not repetitive and should not be dismissed.  Although the fifth, ninth, and twelfth causes of action are ambiguously labeled and allege similar facts, each cause of action contains factual allegations specific to one of the parties, and each cause of action appears to be on behalf of a particular party.  For example, the fifth cause of action is

18

labeled "by plaintiffs." However, it contains three paragraphs (Item 22, ¶¶ 44-46) which specifically allege facts pertinent to Mr. Pierce's claim. Additionally, these factual allegations are not made in either the ninth or the twelfth causes of action. Furthermore, paragraph E in the prayer for relief states that the fifth cause of action is "in favor of" Mr. Pierce. Similarly, paragraph I states that the ninth cause of action is "in favor of" Mrs. Pierce, and paragraph L states that the twelfth cause of action is "in favor of" of plaintiffs on behalf of their minor children. Therefore, despite its lack of clarity and organization, this court finds that the amended complaint states a fifth cause of action on behalf of Mr. Pierce, a ninth cause of action on behalf of Mrs. Pierce, and a twelfth cause of action on behalf of the minor children for intentional infliction of emotional distress.

The defendants also state that plaintiffs' seventh and eleventh causes of action, for "damages to personal property," are not cognizable claims (Item 24, p. 15). Defendants argue that damages alone are not a "cause of action;" rather, damages to personal property can only be claimed as relief sought in another cause of action (*id.*). The court, however, finds that plaintiffs' "damage to personal property" claims are essentially claims for trespass to chattels. *See, e.g., Davidoff v. Davidoff*, 2006 WL 1479558, at *10 (N.Y. Sup. Ct. May 10, 2006) (concluding that plaintiff's cause of action for destruction of personal property was essentially a claim for trespass to chattels). Moreover, in order to establish a claim for trespass to chattels, a plaintiff must allege that the defendants "intentionally, and without justification or consent, physically interfered with [the] use and enjoyment of [plaintiffs'] personal property in plaintiffs' possession, and that [plaintiffs were] harmed thereby." *School of Visual Arts v. Kuprewicz*, 771 N.Y.S.2d. 804 (N.Y. Sup. Ct. 2003). Here, the plaintiffs have alleged, in both the seventh and the eleventh causes of

19

action, that the Sheriff's Deputies removed the heirloom rifle from Diane Pierce's hands, tossed it in the trunk of their car, and returned it in a damaged state upon the release of Mr. Pierce (Item 22, ¶¶ 56-58, 70-72).  Therefore, the court finds that plaintiffs' seventh and eleventh causes of action for "damage to personal property" state sufficient claims against defendants for trespass to chattels.

## **CONCLUSION**

Accordingly, the defendants' motion to dismiss is granted in part and denied in part. The causes of action brought pursuant to 42 U.S.C. § 1983 against the municipal defendants and defendants Gerace and Maurer are dismissed, and the motion is denied as to the claims brought against deputies Ottoway and Beichner in their individual capacities.  The court will retain supplemental jurisdiction over plaintiffs' state law claims. The parties shall meet with the court on Monday, November 26, 2007, at 10 a.m. to set a further schedule.

So ordered.


_____\s\ John T. Curtin_____
JOHN T. CURTIN
United States District Judge

Dated: September 28   , 2007
p:\pending\2006\06-644.july3007