UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JEFFERSON L. PIERCE, et al.,

                              Plaintiffs,

               -vs-                                          06-CV-644C(F)

CHRIS OTTOWAY and
JASON BEICHNER,

                              Defendants.

_____

APPEARANCES:   CHARLES EDWARD FAGAN, ESQ., Jamestown, New York, for
               Plaintiffs.

               BENDER, CRAWFORD & BENDER, LLP (ROBERT A. CRAWFORD,
               ESQ., of Counsel), Buffalo, New York, for Defendants.


## BACKGROUND

          This case was commenced on September 26, 2006 (Item 1).  Plaintiffs brought suit

against the County of Chautauqua, the Chautauqua County Sheriff's Department, Sheriff

Joseph A. Gerace, individually and in his official capacity, Sheriff's Deputies Chris Ottoway

and Jason Beichner and any other deputies involved, the Commissioner of the

Chautauqua County Department of Social Services, Kirk Maurer, individually and in his

official capacity, and the Chautauqua County Department of Social Services and any of its

agents who may have been involved.  Plaintiffs seek damages for the alleged unlawful

detention and assault of plaintiff Jefferson Pierce following the investigation of a reported

use of a firearm at the Pierce residence.  Plaintiffs' causes of action are based on theories

of liability for several common law torts as well as violations of plaintiffs' civil rights under

42 U.S.C. § 1983.

Plaintiffs filed an amended complaint on December 14, 2006 (Item 22).   On January 5, 2007, the defendants filed a motion to dismiss plaintiffs' claims pursuant to Fed. R. Civ. P. 12(b)(6) (Item 23).   In an order filed September 28, 2007, the motion was granted in part and denied in part (Item 36).   Specifically, the section 1983 causes of action against the municipal defendants were dismissed, as were the section 1983 claims against Sheriff Gerace and Commissioner Maurer.   Only plaintiffs' section 1983 claims against the individual deputies remained, as well as various state law claims.

There are presently several motions pending before the court.   Plaintiffs have made a motion to compel the production of personnel files of defendants Ottoway and Beichner, which have been provided to the court for *in camera* review (Item 47).   They have also filed a motion to amend/correct the complaint (Item 52), seeking to reinstate the section 1983 claims against Chautauqua County and Sheriff Gerace.   Plaintiffs argue that subsequent discovery has shown evidence of a failure to properly train the dispatcher who directed the deputies to the plaintiffs' residence and a failure to properly train the deputies.

Defendants oppose the motion to amend the complaint and have cross-moved for partial summary judgment (Item 55).   They argue that plaintiffs are unable to state a cognizable section 1983 claim against Sheriff Gerace or Chautauqua County based on the single error committed by the dispatcher in erroneously advising the deputies that plaintiff Jefferson Pierce was a convicted felon.   Additionally, defendants argue that the section 1983 claim based on false arrest against the deputies should be dismissed, as the deputies had probable cause for the arrest and are entitled to qualified immunity.   Finally, defendants contend that New York state law prohibits plaintiff from recovering damages under general negligence principles for a claim arising from a law enforcement officer's

alleged failure to exercise due care in pursuing and making an arrest.

Oral argument on all the motions was heard on November 6, 2008. For the reasons that follow, the motion to compel is denied, the motion to amend the complaint is denied, and the motion for summary judgment is granted.

## **FACTS**

Deputy Beichner testified in a deposition that he began his employment with the Chautauqua County Sheriff's Department in October 2005 (Item 52, Exh. C. "Beichner Dep.," p. 8). He stated that he did not recall receiving any specific training with regard to the civil rights of individuals suspected of crimes. *Id.* p. 25. On November 25, 2005, Deputy Beichner was field training with Deputy Ottoway. *Id.* p. 30. At approximately 7:30 p.m., the deputies were dispatched to the plaintiffs' residence. A neighbor had called to report that Mr. Pierce was discharging a firearm outside the house and may be a convicted felon. *Id.* p. 36. Deputy Ottoway contacted the dispatcher to confirm whether Mr. Pierce was a convicted felon, and the dispatcher reported that he was. *Id.* p. 39.

The deputies proceeded to the Pierce residence and exited their vehicle (Beichner Dep., p. 45). They went to the front door of the house, knocked on the door, and announced their presence. Deputy Ottoway told Mr. Pierce that a neighbor had complained about the discharge of a weapon, and asked if there were weapons in the house. *Id.* pp. 51-52. Mr. Pierce responded that there were, and Deputy Ottoway informed Mr. Pierce that it was alleged that he was a convicted felon. Mr. Pierce acknowledged that he had been arrested on felony charges, but stated that he had not been convicted of

those charges. *Id.* pp. 54-55.  The deputies then contacted the dispatcher by radio to re-check Mr. Pierce's criminal history.  *Id.* p. 55.

Beichner further testified that the deputies entered the plaintiffs' house.  (Beichner Dep., p.56).  He stated that the plaintiffs could hear the radio response when the dispatcher confirmed the fact of Mr. Pierce's felony conviction.  *Id.* p. 59.  At that time, Mrs. Pierce became upset and threatened to sue the officers.  *Id.* p. 60.

The deputies took possession of the firearms in the plaintiffs' house.  Mrs. Pierce attempted to grab a gun from Deputy Beichner, stating that it was a family heirloom (Beichner Dep., p. 62).  The deputies secured the guns in their vehicle and returned to the residence.  Deputy Beichner testified that the deputies contacted the dispatcher to re-check Mr. Pierce's criminal history again.  *Id.* p. 68.  The deputies were advised that Mr. Pierce was a convicted felon, and placed him under arrest.  Deputy Beichner testified that Mr. Pierce was "pretty compliant with the whole situation," and walked to the patrol car with the deputies, who did not want to place him in handcuffs in front of his children.  *Id.* p. 70. Deputy Beichner stated that there was no physical contact with the children or Mr. Pierce, although Mrs. Pierce was upset.  *Id.* pp. 70-71.  Mr. Pierce was handcuffed and taken to the patrol car.  He was not physically subdued, and was allowed to put on shoes and a jacket.  *Id.* pp. 74-76.

Beichner testified that on the way to a local justice court, the deputies received a call from the dispatcher, who asked the deputies to come to the Mayville station (Beichner Dep., p. 84).  Deputy Ottoway went inside the station, and Deputy Beichner stayed with Mr. Pierce in the vehicle.  After about five to ten minutes, Deputy Ottoway returned and

advised Mr. Pierce that there had been a mistake, stated that Mr. Pierce was not a convicted felon, and removed the handcuffs. *Id.* p. 87. The deputies then drove Mr. Pierce home. *Id.* p. 95.

Deputy Chris Ottoway testified in his deposition that he was a Chautauqua County Deputy Sheriff from 2001 through 2008 (Item 52, Exh. E. "Ottoway Dep.", p. 7). In 2003 or 2004, he was suspended for one month because of a charge of driving while intoxicated on a snowmobile. *Id.* p. 8. Deputy Ottoway stated that he underwent numerous training sessions involving dealing with people, constitutional rights, the use of force, and interviewing techniques. *Id.* pp. 19-20.

Deputy Ottoway testified that on November 25, 2005, he was on patrol with Deputy Beichner when they received a call regarding a complaint that Mr. Pierce was shooting a firearm after dark and possibly poaching deer (Ottoway Dep., p. 29). Deputy Ottoway called the complainant, a neighbor of the plaintiffs', who stated that Mr. Pierce was a convicted felon and should not have guns on the premises. Deputy Ottoway then called the dispatcher to run a criminal history check, as possession of a weapon by a convicted felon is a violation of the state penal law. *Id.* p. 30. Dispatcher Rob Kost advised Ottoway that Mr. Pierce had been convicted of criminal possession of stolen property in the fourth degree, a felony, on July 17, 1983. *Id.* p. 35.

Ottoway testified that the deputies proceeded to the Pierce residence and knocked on the door. Mr. Pierce answered, and Deputy Ottoway asked him if he had been discharging firearms. Mr. Pierce admitted to possessing several guns, and showed them to Deputy Ottoway (Ottoway Dep., p. 38). Mr. Pierce denied being a convicted felon, and

5

stated that the charges had been reduced. Deputy Ottoway used his portable radio to contact the dispatcher to confirm Mr. Pierce's criminal history. The dispatcher again told Ottoway that Mr. Pierce was a convicted felon. *Id.* p. 41. Deputy Ottoway testified that he asked the dispatcher three separate times to check Mr. Pierce's criminal history, and was told each time that Mr. Pierce was a convicted felon. *Id.* p. 42.

Deputy Ottoway testified that he had neither a search warrant nor an arrest warrant, but Mr. Pierce allowed him into the house and showed him the guns (Ottoway Dep., p. 42). The deputies seized the guns and advised Mr. Pierce to get his coat and come outside so that he would not be handcuffed in front of his children. *Id.* p. 49. Mrs. Pierce was "screaming and yelling" and tried to take a gun from Deputy Beichner. *Id.* pp. 52-53. There was no physical altercation with any of the plaintiffs. *Id.* On the way to Justice Court in Mayville, the dispatcher contacted Deputy Ottoway and said that he may have been mistaken about Mr. Pierce's criminal history. Deputy Ottoway went to the dispatch office, read the criminal history report, and determined that Mr. Pierce was not a convicted felon. *Id.* pp. 59-61. Deputy Ottoway took Mr. Pierce home and returned his guns. *Id.* p. 67.

Robert Kost, the dispatcher for the Chautauqua County Sheriff's Department, testified in a deposition that he was a full-time dispatcher for approximately 32 years (Item 52, Exh. D. "Kost Dep.," p. 9). On November 25, 2005, Mr. Kost was working as a dispatcher and was asked by Deputy Ottoway to run a criminal history check on plaintiff Jefferson Pierce. *Id.* pp. 18-19. After reviewing the criminal history report, Mr. Kost advised Deputy Ottoway that plaintiff Jefferson Pierce was a convicted felon. *Id.* p. 27. Within a few minutes, Pierce had been brought to the station in Mayville, New York. Mr.

6

Kost conferred with Deputy Ottoway and determined that Pierce was not a convicted felon. *Id.* p. 29.  Mr. Kost stated that he was trained generally as part of the periodic dispatcher certification process, and that some of the training included the interpretation of criminal history reports.  *Id.* p. 30.  He was not subjected to disciplinary action as a result of this mistake, and was never disciplined during the course of his employment as a dispatcher. *Id.* pp. 10, 31.

## **DISCUSSION**

### I.     **Motion to Compel**

Plaintiffs seek disclosure of the personnel files of defendants Ottoway and Beichner, and defendants have provided this material to the court for *in camera* review.  New York Civil Rights Law § 50-a "provides that the personnel files of police officers are not to be disclosed except by consent of the individual or pursuant to court order."  *Mercado v. Division of N .Y. State Police*, 989 F. Supp. 521, 522 (S.D.N.Y. 1998).  A court order directing disclosure shall not be issued "without a clear showing of facts sufficient to warrant the judge to request records for review." N.Y. Civil Rights Law § 50-a(2). In the context of a civil rights action asserted against police officers, no federal rule prohibits discovery of police personnel documents. *King v. Conde*, 121 F.R.D. 180, 187 (E.D.N.Y. 1988). Therefore, the interests favoring and opposing confidentiality must be balanced unless defendants can demonstrate a "substantial threshold showing" of specific harm that may accrue from the disclosure of such documents.  *Id.* p.189.  The relevance of the documents at issue should be determined before allowing disclosure even if the defendant

has not made a substantial threshold showing of harm. *See Barrett v. City of New York,* 237 F.R.D. 39, 41-42 (E.D.N.Y. 2006).

Here, having reviewed the defendants' personnel records, the court finds nothing remotely relevant to the plaintiffs' claims of alleged excessive use of force or violation of civil rights. Disclosure of the records would serve no purpose other than to invade the privacy of the defendants. Accordingly, disclosure of the personnel records is not appropriate, and the motion to compel is denied.

## II. Motion to Amend the Complaint

The plaintiffs seek to reinstate their claims against Sheriff Gerace and Chautauqua County. Specifically, in the proposed second amended complaint, plaintiffs allege that Sheriff Gerace and Chautauqua County "allowed an ongoing custom and/or policy, to develop over time, of failing to train their officers/agents, and said failure to train constitutes a deliberate indifference to the rights of citizens." Item 52, Exh. F., ¶ 27. Additionally, plaintiffs allege that defendants Gerace and Chautauqua County "have a municipal policy or custom allowing its officers to act on complaints with no background check, inquiry into the source of the complaint, or without proper investigation whatsoever to justify the degree of force displayed . . ." and this policy is in existence because of the "action and/or lack of action in controlling and/or lack of training" of the Deputy Sheriffs. *Id.* ¶ 28. Defendants oppose the motion, arguing that any amendment would be futile as plaintiffs are still unable to state a claim against the County or the Sheriff.

As a general matter, the district court has discretion whether or not to grant leave to amend. *See Foman v. Davis,* 371 U.S. 178, 182 (1962); *Evans v. Syracuse City School*

8

*Dist.*, 704 F.2d 44, 47 (2d Cir. 1983).   In exercising its discretion, the district court is required to heed the command of Rule 15(a) to grant leave to amend "freely . . . when justice so requires."   Fed. R. Civ. P. 15(a)(2).   Where it appears that granting leave to amend is unlikely to be productive, however, it is not an abuse of discretion to deny leave to amend.   *See, e.g., Foman v. Davis,* 371 U.S. at 182 (denial not abuse of discretion where amendment would be futile); *Health-Chem Corp. v. Baker,* 915 F.2d 805, 810 (2d Cir. 1990) ("where . . . there is no merit in the proposed amendments, leave to amend should be denied").

In order for a plaintiff to sustain a section 1983 claim against a supervisory official in his individual capacity, the plaintiff must allege and demonstrate that the official was personally involved in the alleged constitutional violation. *See Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (citing *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003)).

> The personal involvement of a supervisory defendant may be shown by the evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of [others] by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citing *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986)).   Here, plaintiffs do not allege that Sheriff Gerace directly participated in the alleged violation of civil rights.   Rather, they allege that Sheriff Gerace

instituted a policy whereby deputies routinely violated civil rights, and failed to properly train the deputies and dispatchers.

Municipalities are considered "persons" for the purposes of section 1983 claims; however, the municipality may not be sued under section 1983 unless the challenged action of a municipal employee was performed pursuant to a municipal custom or policy. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691, 694 (1978).  Moreover, a municipality cannot be held liable under section 1983 for the tortious conduct of its employees based on a *respondeat superior* theory. *Id.* at 691.  Although a plaintiff must show the existence of a municipal custom or policy, the custom or policy need not be an explicitly stated rule or regulation.  *Ricciuti v. N.Y.C. Transit Authority*, 941 F.2d 119, 123 (2d Cir. 1991). Rather, an inference that a municipal custom or policy exists may be drawn from:

> circumstantial proof, such as evidence that the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction, or evidence that the municipality had notice of but repeatedly failed to make any meaningful investigation into charges that police officers had used excessive force in violation of the complainants' civil rights . . . .

*Id.* (citations omitted).  An inference of a municipal custom or policy may not, however, be drawn from "a single incident alleged in a complaint, especially if it involved only actors below the policy-making level . . . ." *Id.*

In order for a plaintiff to demonstrate a municipality's "deliberate indifference" to the constitutional rights of those within its jurisdiction, a plaintiff must show that the "need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [municipality] can reasonably be said to have been deliberately indifferent to the need."  *City of Canton v. Harris*, 489

U.S. 378, 390 (1989).  "An obvious need may be demonstrated through proof of repeated complaints of civil rights violations; deliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents." *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995) (citing *Ricciuti*, 941 F.2d at 123; *Fiacco v. City of Rensselaer*, 783 F.2d 319, 328 (2d Cir. 1986), *cert. denied,* 480 U.S. 922 (1987)).

As they did in opposition to the defendants' previous motion to dismiss, the plaintiffs allege that Sheriff Gerace and/or Chautauqua County "have a municipal policy or custom allowing its officers to act on complaints with no background check, inquiry into the source of the complaint, or without proper investigation whatsoever to justify the degree of force displayed . . . ."  Item 52, Exh F., ¶ 28.  However, plaintiffs' proposed amended complaint contains no factual allegations which support an inference of such a policy other than the events which took place at plaintiffs' residence on November 25, 2005.  The plaintiffs allege that, because certain actions were taken during the course of the arrest of Mr. Pierce, these actions represent a custom or policy of Sheriff Gerace and/or Chautauqua County.  As stated above, an inference of a custom or policy cannot be drawn from "a single incident alleged in a complaint."  *Ricciuti*, 941 F.2d at 123.  Had plaintiffs alleged other occurrences of similar conduct by Chautauqua County deputies, the court may be able to draw an inference of such a custom or policy.  In the absence of such factual support, however, the court finds that the amendment would be futile.

Similarly, the plaintiffs have failed to allege enough facts to support an inference that Chautauqua County and/or Sheriff Gerace have failed to properly train or supervise their municipal employees.  Plaintiffs allege that Sheriff Gerace and/or Chautauqua County

"allowed an ongoing custom and/or policy, to develop over time, of failing to train their officers/agents, and said failure to train constitutes a deliberate indifference to the rights of citizens."  Item 52, Exh. F., ¶ 27.  Plaintiffs argue that the dispatcher, Mr. Kost, was not properly trained in the reading of criminal history reports.  However, the record reflects that Mr. Kost was a dispatcher for 32 years, had been trained and was repeatedly certified, and was familiar with criminal history reports.  Unfortunately, he made one mistake, which was quickly corrected.  The plaintiffs rely solely on the events surrounding Mr. Pierce's arrest, and allege no other incidents of errors with the reading of criminal history reports by Mr. Kost or any other dispatcher.  Furthermore, plaintiffs do not allege that Chautauqua County had any knowledge of officers who have acted with deliberate indifference to the rights of "citizens."  Therefore, the court cannot conclude that Chautauqua County's need to train its officers and agents was "so obvious" that its failure to do so was a reflection of its "deliberate indifference" to the constitutional rights of its citizens.  *See Canton*, 489 U.S. at 390; *cf. Aguilera v. County of Nassau*, 453 F. Supp. 2d 601, 609 (E.D.N.Y. 2006) (holding that the plaintiff's allegations for failure to train its employees were sufficient because the plaintiffs alleged that the county received "numerous complaints regarding its officers['] failure to provide immediate emergency medical attention").  Without factual support, the court is unable to draw the inference that Chautauqua County and/or Sheriff Gerace failed to adequately train their employees.  Accordingly, plaintiffs' proposed amendment would be futile, and the motion to amend/correct the complaint is denied.

III.    **Motion for Summary Judgment**

Defendants have cross-moved for partial summary judgment.  They argue that Deputies Ottoway and Beichner had probable cause to arrest Mr. Pierce and that their actions are insulated by qualified immunity.  Additionally, defendants argue that plaintiffs' negligence claims relating to the false arrest and detention claims must be dismissed.

A.    **False Arrest and Imprisonment/Detention**

In the first and second causes of action, plaintiffs allege that Mr. Pierce was subjected to false arrest and detention in violation of his constitutional rights.   "The elements of false arrest/imprisonment under § 1983 are substantially the same as those under New York law."  *See Caidor v. M&T Bank*, 2006 WL 839547, at *4 n.10 (N.D.N.Y. March 27, 2006) (citing *Danielak v. City of New York*, 2005 WL 2347095, at *6 (E.D.N.Y. 2005), *aff'd,* 209 Fed. Appx. 55 (2d Cir. 2006)).  In order for a plaintiff to state a claim for false arrest/imprisonment under New York law, a plaintiff must show that:   (1) the defendant intended to confine him, (2) plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged or justified.  *Id.* (quoting *Brewster v. Nassau County*, 349 F. Supp. 2d 540, 551 (E.D.N.Y. 2004)).

In this case, the record establishes that plaintiff: (1) was confined by Deputies Ottoway and Beichner, (2) was conscious of the confinement, and (3) did not consent to the confinement by the deputies.  Therefore, plaintiff satisfies the first three elements, as set forth above, of the false arrest/imprisonment claims.  Defendants' motion turns on the element of probable cause, which is usually a question of fact following discovery.  *See*

13

*Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) ("The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers"); *Bullard v. City of New York*, 240 F. Supp. 2d 292, 298 (S.D.N.Y. 2003) ("In contrast, '[w]here the question of whether an arresting officer had probable cause is predominantly factual in nature . . . the existence . . . of probable cause is to be decided by the jury'") (quoting *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir.1997), *cert. denied,* 522 U.S. 1115 (1998)).   Plaintiffs argue that the deputies lacked probable cause for the arrest, and violated Mr. Pierce's Fourth Amendment rights by entering his home to effect the arrest without a warrant, consent, or exigent circumstances.

The Fourth Amendment "prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest." *Payton v. New York*, 445 U.S. 573, 576 (1980).   "[P]olice officers need either a warrant or probable cause plus exigent circumstances in order to make a lawful entry into a home." *Kirk v. Louisiana*, 536 U.S. 635, 638 (2002).   "The essential question in determining whether exigent circumstances justified a warrantless entry is whether law enforcement agents were confronted by an 'urgent need' to render aid or take action."   *United States v. MacDonald,* 916 F.2d 766, 770 (2d Cir. 1990) (en banc), *cert. denied,* 498 U.S. 1119 (1991).

The court considers the following factors to determine whether exigent circumstances justifying a warrantless entry are present:

14

> (1) the gravity or violent nature of the offense with which the suspect is to be charged; (2) whether the suspect is reasonably believed to be armed; (3) a clear showing of probable cause ... to believe that the suspect committed the crime; (4) strong reason to believe that the suspect is in the premises being entered; (5) a likelihood that the suspect will escape if not swiftly apprehended; and (6) the peaceful circumstances of the entry.

*United States v. Fields,* 113 F.3d 313, 323 (2d Cir.), *cert. denied,* 522 U.S. 976 (1997) (quoting *United States v. MacDonald*, 916 F.2d at 769-70).  These factors are "intended not as an exhaustive canon, but as an illustrative sampling of the kinds of facts to be taken into account."  *MacDonald*, 916 F.2d at 770. Thus, the presence or absence of any single factor is not dispositive.  *Loria v. Gorman*, 306 F.3d 1271, 1284 (2d Cir. 2002).

Additionally, probable cause exists when, at the moment of the arrest, "the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [individual] had committed or was committing an offense." *Brewster v. Nassau County*, 349 F. Supp. 2d. at 551 (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)).  The determination of whether probable cause exists can be made by the court as a matter of law, so long as there is "no dispute as to the pertinent events and the knowledge of the arresting officers." *Id.* (citing *Weyant v. Okst*, 101 F.3d at 852).

Here, the record reflects that the deputies investigated a citizen report that Mr. Pierce was a convicted felon discharging firearms on his property.  They requested a check of his criminal history and were advised that Mr. Pierce was a convicted felon.  The deputies then asked Mr. Pierce if he was in possession of firearms, and he admitted that he was.  While Mr. Pierce denied his status as a convicted felon, he did not deny his

15

possession of firearms.  At that point, despite the erroneous report of Mr. Pierce's criminal history, the deputies had probable cause to arrest Mr. Pierce as a felon in possession of weapons.  The deputies claim that Mr. Pierce invited them into the home to show them the guns and was cooperative, while plaintiffs claim that the deputies pushed their way in without a warrant or consent.  Accepting the truth of plaintiffs' allegations, that the deputies forced their way into the home without consent, exigent circumstances nonetheless justified the deputies' entry into the home to effect the arrest of Mr. Pierce.

In support of their argument that the deputies should have obtained a warrant before entering the Pierce home, plaintiffs rely on *Loria v. Gorman,* 306 F.3d 1271 (2d Cir. 2002), in which a police officer's warrantless entry in to a suspect's home was found not be justified by exigent circumstances.  In *Loria,* the officers were investigating a complaint of the violation of a city noise ordinance, a misdemeanor offense.  No one was at risk of danger, and no emergency existed at the time.  Unlike Mr. Pierce, the suspect in *Loria* was not reasonably believed to be armed.  Here, the deputies knew there were firearms on the premises, and had probable cause to believe that Mr. Pierce was a felon in possession of such weapons.  Additionally, swift apprehension of Mr. Pierce could prevent the disposal of the weapons.  The court accepts that the plaintiffs dispute the peacefulness of the deputies' entry into the premises.  Nonetheless, the court concludes that it was objectively reasonable for the deputies to enter the plaintiffs' home and effect the arrest of Mr. Pierce. *See United States v. Fields,* 113 F.3d at 323.  Accordingly, plaintiffs' section 1983 claims for false arrest and false imprisonment/detainment (first and second causes of action) are dismissed.

16

**B.      Negligence**

Finally, defendants argue that the plaintiffs' fourth and eighth causes of action, sounding in negligence, must be dismissed.  In their fourth cause of action on behalf of Mr. Pierce, plaintiffs allege that the false arrest and detention of Jefferson Pierce, as well as the illegal harassment and assault on the family, were caused by the negligence of Sheriff Gerace and the Sheriff's Department, acting upon false information and without proper investigation, "all in violation of Plaintiff's Civil Rights, which are guaranteed to Plaintiff under the United States and New York State Constitutions."  Item 22, ¶ 42.  In the eighth cause of action on behalf of plaintiff Diane Pierce, plaintiffs allege that the false arrest and detention of Jefferson Pierce, as well as the illegal harassment and assault on the family, were caused by the negligence of Sheriff Gerace and the Sheriff's Department, acting upon false information and without proper investigation, "all in violation of Plaintiff's Civil Rights, which are guaranteed to Plaintiff under the United States and New York State Constitutions."  *Id.* ¶ 60.

In the fourth and eighth causes of action, plaintiffs have simply restated section 1983 claims for failure to train or supervise against Sheriff Gerace and the municipality.  It is well settled that negligence does not give rise to a constitutional violation and is not actionable under section 1983.  *See Daniels v. Williams,* 474 U.S. 327, 329-32 (1986).  As the section 1983 claims against Gerace and the municipality have been dismissed, these claims should be dismissed as well.  To the extent that these claims are against the individual deputies, they are a restatement of the false arrest/detention claims and should also be dismissed. Courts within New York have consistently held that where the underlying conduct on which a negligence claim is based rests on an arrest, imprisonment, and prosecution of the

17

plaintiff, the "[p]laintiff may not recover under broad principles of general negligence, . . . but must proceed by way of the traditional remedies of false arrest and imprisonment and malicious prosecution." *Boose v. City of Rochester*, 421 N.Y.S.2d 740, 744 (App.Div. 1979); *see also Bernard v. United States,* 25 F.3d 98, 102 (2d Cir. 1994) (observing that New York law does not provide for recovery under general negligence principles for a claim that law enforcement officials failed to exercise the appropriate degree of care in effecting an arrest or initiating a prosecution); *Higgins v. City of Oneonta*, 617 N.Y.S.2d 566 (App. Div. 1994), *lv. to app. denied,* 648 N.E.2d 793 (1995) (a party seeking damages for an injury resulting from a wrongful arrest and detention is relegated to the traditional remedies of false arrest and imprisonment). Accordingly, the fourth and eighth causes of action are dismissed.

## CONCLUSION

The plaintiffs' motion to compel is denied, the plaintiffs' motion to amend/correct the complaint is denied, and the defendants' motion for partial summary judgment is granted dismissing the first, second, fourth, and eighth causes of action. The court will conduct a telephone conference on April 9, 2009, at 10:30 a.m. to set a date for trial of the remaining causes of action. In the interim, counsel for the parties are encouraged to communicate in an attempt to settle this case.

So ordered.

_____  \s\ John T. Curtin_____
JOHN T. CURTIN
United States District Judge

Dated:   3/10                , 2009
p:\opinions\06-644.feb2609